UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

WILLIAM T. SHERROD, JR.,          )
                                    )
                Plaintiff,      )    13 C 6800
                                    )
            vs.              )    Judge Feinerman
                                    )
CAROLYN TAFT GROSOBOLL,     )
                                    )
                Defendant.   )

**M**EMORANDUM **O**PINION AND **O**RDER

Plaintiff William T. Sherrod, Jr., commenced this *pro se* suit by filing a complaint

alleging that Defendant Carolyn Taft Grosoboll, the Clerk of the Supreme Court of Illinois,

violated state law and the federal Constitution when she declined to accept for filing the petition

for leave to appeal ("PLA") and other papers that he had submitted.  This court granted

Sherrod's application for leave to proceed *in forma pauperis* and then reviewed the complaint

under 28 U.S.C. § 1915(e)(2).  Doc. 5.  Pursuant to § 1915(e)(2)(B)(ii), which provides that the

court shall dismiss an *in forma pauperis* case "at any time" if it determines that the action "fails

to state a claim on which relief may be granted," 28 U.S.C. § 1915(e)(2)(B)(ii), the court

dismissed Sherrod's state law malpractice and Sixth Amendment claims with prejudice, and his

First Amendment and Fourteenth Amendment claims without prejudice.  Doc. 5.  What was

missing from the First and Fourteenth Amendment claims, the court explained, was the

explanation given by Grosoboll for declining to accept Sherrod's papers for filing.  *Ibid*.  The

court gave Sherrod leave to replead those claims in an amended complaint, and stated that any

amended complaint should attach Grosoboll's letters to him explaining the basis for her actions.

*Ibid*.

Before proceeding, the court pauses to note that it did not dismiss the complaint under § 1915(e)(2)(B)(iii), which states that the court shall dismiss an *in forma pauperis* case if it determines that the action "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(iii). It is true that clerks of court are entitled to quasi-judicial immunity from damages claims under some circumstances. *See Richman v. Sheahan*, 270 F.3d 430, 434-35 (7th Cir. 2001). However, for reasons unnecessary to discuss here, it is not clear from Sherrod's complaint that his damages claims against Grosoboll fit within the circumstances in which quasi-judicial immunity is appropriate. *See Snyder v. Nolen*, 380 F.3d 279, 288-89 (7th Cir. 2004) (per curiam) (rejecting quasi-judicial absolute immunity where the defendant clerk of court was alleged to have refused to file a pleading in the absence of explicit judicial direction).

Sherrod filed an amended complaint, which attempts to state a First Amendment access-to-the-courts claim and a materially identical Fourteenth Amendment due process claim. Doc. 8. The amended complaint attaches the letters that Grosoboll sent to Sherrod explaining why she did not file Sherrod's papers. Doc. 8 at pp. 14-15, 20; Doc. 8-1 at pp. 36-37. Grosoboll sent the first letter on July 16, 2013, the same day that the Clerk's Office received Sherrod's papers. Doc. 8 at p. 14. The letter informed Sherrod that his papers would not be filed because his "petition for leave to appeal [did] not comply with the rules, and any motions to be filed should be separate documents and submitted pursuant to Supreme Court Rule 361." *Ibid*.; *see* Ill. Sup. Ct. R. 361(b)(3) ("Motions, supporting papers, and responses filed in the Supreme Court shall consist of an original and one copy…. A proposed order phrased in the alternative … shall be submitted with each motion, and a copy shall be served upon all counsel of record."). The letter attached a "pro se template" containing "detailed samples for preparing a pro se petition to this Court, along with a copy of Supreme Court Rule 315, which governs the filing of petitions in the Supreme Court" for the purpose of "guid[ing] [Sherrod] while preparing [his] petition for leave

to appeal and any motion [he] deem[s] necessary." Doc. 8 at p. 14; *see* Ill. Sup. Ct. R. 315 (setting forth the requirements for filing a petition for leave to appeal).

On August 16, 2013, four days after Sherrod resubmitted his papers, Grosoboll sent Sherrod a second letter stating that she could not file his papers for the same reasons given in her first letter. Doc. 8 at p. 20 ("Please refer to our correspondence dated July 16, 2013."). Sherrod then submitted his papers a third time, and Grosoboll again declined to file them for reasons set forth in a letter sent on September 5, 2013. Doc. 8-1 at pp. 36-37. That letter listed the following as grounds for declining to file Sherrod's papers: (1) "Certificate of Compliance is not proper (SCR [Illinois Supreme Court Rule] 341(c) for correct wording)"; (2) "Proof of Service (SCR 12) is not compliant (Attorney General Lisa Madigan's office must be served as well as the State's Attorney of Cook County)"; (3) "Body of Petition must be double-spaced"; (4) "Body of Petition must have margins of 1.5" on left side and 1" on other three sides"; (5) "Petition must be orderly and easily read"; (6) "Petition must be securely stapled or bound down the left side so that it opens like a book"; (7) "Your petition is not timely, therefore you must file a motion seeking leave to file the late document instanter (See SCR 361 on filing motions) …"; and (8) "The $25.00 docketing fee (SCR 313) [which may be waived] should be paid when your documents are submitted." *Ibid*. The third letter attached "a sample to assist [Sherrod] in preparing a petition for leave to appeal" and directed him to the court's website, where he could access the full text of the Illinois Supreme Court Rules. *Id*. at p. 37.

Sherrod's amended complaint in this court requests the following relief: "(A) Injunctive Relief, of an order instructing the Def[endant] to file [Plaintiff's] Petition as is; (B) Monetary Damages consistent with [Plaintiff's] injuries; [and] (C) Other such relief this Court deems[] lawful, just, fair, equitable, appropriate & proper." Doc. 8 at p. 5. The amended complaint identifies Sherrod's injuries as: "1. [Plaintiff] remains under an unlawful conviction; 2. [Plaintiff]

is under the threat of being re-imprisoned due to the effects of his unlawful conviction; 3. [Plaintiff] suffers severe mental anguish & emotional distress; [and] 4. [Plaintiff] was married in April 2013, he & his family (wife, 2 sons & 1 daughter) are suffering, due to the possibility that [Plaintiff] may be re-imprisoned as a result of him remaining under an unlawful conviction & the results of his unlawful conviction." *Id*. at ¶ 20.

Sherrod has no viable constitutional claim against Grosoboll. A state court litigant does not have a constitutional right to file court papers that violate state procedural rules. *See Snyder*, 380 F.3d at 292 (Easterbrook, J., concurring) (listing court rules, including from the Supreme Court of the United States, that allow or direct court clerks to decline to file noncompliant submissions); *James v. Cayce*, 2013 WL 3807962, at *2 (E.D. La. July 19, 2013) ("the fact [that the clerk's office] on this occasion required plaintiff to follow the applicable court rules and refused to file an improper document simply is not a constitutional violation"). The amended complaint does not allege that Sherrod's papers complied with the rules that Grosoboll believed the papers had violated. It follows that Sherrod has no constitutional claim against Grosoboll. *See James*, 2013 WL 3807962, at *2.

Sherrod would have no claim even if his amended complaint alleged that his state court papers complied with the applicable state court rules. In *Snyder v. Nolen*, *supra*, Snyder alleged that Nolen, the Clerk of the Circuit Court of Saline County, Illinois, violated his First Amendment access-to-the-courts and Fourteenth Amendment due process rights by refusing to file Snyder's papers in a domestic relations action. 380 F.3d at 282-83. Snyder's federal court complaint alleged that even though his state court pleadings "complied with [the state] court's technical filing requirements and alleged a factual basis for a dissolution of marriage and for a temporary restraining order," Nolen refused to file them on the erroneous ground that he did not "go [through] an attorney for a divorce." *Ibid*. Snyder alleged that Nolen's conduct "prevented

[him] from obtaining a court order to prevent his wife from dissipating his non-marital assets." *Id*. at 283.

The Seventh Circuit, over a dissent, ruled that Snyder did not state a constitutional claim. One member of the majority, Judge Easterbrook, reasoned that "[t]he State of Illinois did not deprive Snyder of 'access' to its courts" because "litigants have 'access' to the court when there are avenues to correct mistakes" and because "Snyder could have asked a judge to direct Nolen to file the pleading." *Id*. at 292-93 (Easterbrook, J., concurring). Noting that "the Clerk of the Supreme Court of Illinois … has th[e] authority" under Illinois Supreme Court Rule 131(a) to return, without filing, noncompliant papers, and further noting that Illinois law "authorizes judges to direct clerks to file papers they have returned," Judge Easterbrook asked: "How can those gatekeeping steps, or Nolen's similar act, be thought to deprive anyone of 'access' to the courts, given the litigant's opportunity to ask a judge to direct the clerk to accept and file the paper?" *Id*. at 292 (Easterbrook, J., concurring). With respect to Snyder's due process claim, Judge Easterbrook reasoned: "A forum that offers an opportunity to be heard before a decision becomes final provides due process of law. Litigants disappointed by the acts of a court's administrative staff have that opportunity [by asking a judge to direct the clerk to accept their papers]." *Ibid*. (Easterbrook, J., concurring).

Sherrod clearly has no claim against Grosoboll under Judge Easterbrook's approach. Unlike Nolen, who erroneously told Snyder that he had to "go through an attorney" to file his papers, Grosoboll's actions were nothing more, nothing less, than a routine enforcement of the Illinois Supreme Court Rules. Grosoboll notified Sherrod of the specific rules that his papers violated, and she twice provided him with templates and resources to assist him with re-filing. Had Sherrod resubmitted his papers in a manner that complied with the rules, there is no indication that Grosoboll would have prevented their filing. The re-filing process suggested by

Grosoboll was a clear "avenue[] to correct mistakes," *id*. at 292 (Easterbrook, J., concurring), of which Sherrod could have availed himself. And if Grosoboll persisted in declining to file Sherrod's papers, he could have asked a judge (in this instance, a Justice) to order Grosoboll to file papers that she declined to accept. Thus, under Judge Easterbrook's approach, Sherrod has no claim. *See Kincaid v. Vail*, 969 F.2d 594, 602 (7th Cir. 1992) (holding that even where a "mistake was made or the [filings] mislaid at the clerk's office by the clerks," "this lapse [would be] a mere isolated incident of negligence and … [would] not rise to the level of a constitutional violation actionable under section 1983").

Nor does Sherrod have a viable claim under the approach taken by the two other members of the *Snyder* panel, Judges Ripple and Kanne, who concluded that Snyder's claims were governed by the standard set forth in *Christopher v. Harbury*, 536 U.S. 403 (2002). Under that standard, a plaintiff alleging denial of access to the courts must "identify in the complaint: (1) a nonfrivolous, underlying claim, (2) the official acts frustrating the litigation, and (3) a remedy that may be awarded as recompense but that is not otherwise available in a future suit." *Snyder*, 380 F.3d at 296 (Ripple, J., dissenting); *see also id*. at 293 (Kanne, J., concurring) (agreeing with Judge Ripple's articulation of the *Christopher* test). In addition, a plaintiff must allege causation, meaning that "'that state action hindered his or her efforts to pursue a nonfrivolous legal claim and that consequently the plaintiff suffered some actual concrete injury.'" *Id*. at 301 (Ripple, J., dissenting) (quoting *May v. Sheahan*, 226 F.3d 876, 883 (7th Cir. 2000)). Although Judges Ripple and Kanne agreed on the applicable test, they disagreed over whether Snyder satisfied the third *Christopher* element. *See id*. at 293-94 (Kanne, J., concurring); *id*. at 298-300 (Ripple, J., dissenting).

There is no need to explore that third element here, as the pleadings reveal two independent reasons why Sherrod does not and cannot state an access-to-the-courts claim. First,

Sherrod fails to allege a nonfrivolous, underlying claim, as required by the first element of the *Christopher* test. *See Christopher*, 536 U.S. at 415 ("the named plaintiff must identify a 'nonfrivolous,' 'arguable' underlying claim") (quoting *Lewis v. Casey*, 518 U.S. 343, 353 & n.3 (1996)). A review of the *pro se* papers that Sherrod sought to file in the state supreme court, Doc. 8 at 8-12, 25-29; Doc. 8-1 at 40-47; Doc. 8-2 at 15-18, shows that there is no chance whatsoever that the court would have granted his PLA or his request for supervisory relief (which is relief roughly equivalent to a grant, vacate, and remand, or "GVR," in the Supreme Court of the United States). Sherrod's arguments to the state supreme court, such as that he was convicted of a sex offense without insufficient evidence and that the state trial court's judgment was void, were frivolous, both on the merits and as issues that might possibly capture the state supreme court's attention as worthy of discretionary review. And because Sherrod did not have a nonfrivolous claim, he cannot state an access-to-the-courts claim. *See Fawley v. GEO Grp., Inc.*, __ F. App'x __, 2013 WL 5567916, at *2 (10th Cir. Oct. 10, 2013) (affirming the district court's dismissal of the plaintiff's access-to-the-courts claim because the "[his] state-court actions were frivolous"); *Mendoza v. Strickland*, 414 F. App'x 616, 619 (5th Cir. 2011) (same, where the court could not "conclude that the post-conviction application contained a non-frivolous, arguable underlying claim") (internal quotation marks omitted).

Second, Sherrod cannot satisfy the causation element of an access-to-the-courts claim, as Grosoboll's actions did not actually result in Sherrod's inability to pursue his claims before the state supreme court. True, Grosoboll declined to file Sherrod's papers. But Grosoboll cannot fairly be said to have "hindered" his access to the court as that term is understood in the cases. *May*, 226 F.3d at 883. The reason is that Grosoboll provided Sherrod with a clear explanation of why his papers were being rejected and, of critical importance, provided him with guidance and templates he could use to conform his papers to the rules. Accordingly, Sherrod's access to the

state supreme court was hindered not by Grosoboll, but by his own failure to follow Grosoboll's advice and submit rules-compliant papers. For this reason, Sherrod cannot establish the causation necessary to his access-to-the-courts claims. *See Broudy v. Mather*, 460 F.3d 106, 123 (D.C. Cir. 2006) (holding that causation was lacking in an access-to-the-courts case where the plaintiffs filed a FOIA request with several agencies but "[did] not challenge[] in any court these agencies' failure or refusal to provide the requested documents," reasoning that "[b]ecause plaintiffs can still seek, through FOIA, the documents they believe they need to meaningfully pursue their benefits claims, they cannot show … that the defendants' actions presently denied the plaintiffs an opportunity to litigate") (internal quotation marks, citation, and brackets omitted).

The court notes that there may be other grounds on which some or all of Sherrod's claims could be dismissed. *See*, *e.g.*, *Burd v. Sessler*, 702 F.3d 429 (7th Cir. 2012) (applying a *Heck* bar to a damages claim under circumstances similar to those presented here); *Sherrod v. Travis*, 2013 WL 593955, at *3 (N.D. Ill. Feb. 15, 2013) (concluding in a prior suit of Sherrod's that certain of his claims were likely *Heck*-barred). But it is unnecessary to explore those grounds to conclude that the amended complaint fails to state a claim. The dismissal of the amended complaint is with prejudice; because it is clear that Grosoboll committed no constitutional violation under either of the approaches articulated in *Snyder*, any amendment would be futile. *See Tribble v. Evangelides*, 670 F.3d 753, 761 (7th Cir. 2012) ("District courts have broad discretion to deny leave to amend … where the amendment would be futile."); *Estrada v. Reed*, 346 F. App'x 87, 89-90 (7th Cir. 2009) (affirming the district court's denial of "a futile amendment" where the plaintiff could not state a viable constitutional claim).

February 7, 2014

_____
United States District Judge